1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

GINA MARIE VINATIERI,

       Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. ED CV 12-1871-SP

**MEMORANDUM OPINION AND
ORDER**

19

## I.

20

## INTRODUCTION

21

      On October 29, 2012, plaintiff Gina Marie Vinatieri filed a complaint against

22 defendant, the Commissioner of the Social Security Administration

23 ("Commissioner"), seeking a review of a denial of period of disability and disability

24 insurance benefits ("DIB").  Both plaintiff and defendant have consented to proceed

25 for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The

26 parties' briefing is now complete, and the court deems the matter suitable for

27 adjudication without oral argument.

28

      Two issues are presented for decision here: (1) whether the Administrative

1  Law Judge ("ALJ") properly evaluated plaintiff's and plaintiff's husband's
2  credibility; and (2) whether the ALJ properly developed the vocational issues in the
3  case.

4      Having carefully studied, inter alia, the briefs submitted by the parties and the
5  Administrative Record ("AR"), the court finds that the ALJ erred.  Although the
6  ALJ did properly develop the vocational issues in the case, the ALJ's reasons for
7  finding plaintiff not credible were not clear and convincing.  The court therefore
8  reverses the Commissioner's decision denying benefits and remands for further
9  proceedings consistent with this opinion.

10                                          II.

11              **FACTUAL AND PROCEDURAL BACKGROUND**

12      Plaintiff, who was forty-five years old on the date of her April 8, 2011
13  administrative hearing, has attended some college.  *See* AR at 26, 20.  Her past
14  relevant work includes employment as a certified nursing assistant and warehouse
15  worker.  *Id.* at 16, 30, 52-53.

16      Plaintiff filed for DIB and period of disability on April 10, 2009.  *Id.* at 124-
17  143.  Plaintiff alleged that she has been disabled since April 21, 2007.  *Id.* at 124.
18  Plaintiff's application was denied initially and upon reconsideration, after which she
19  filed a request for a hearing.  *Id.* at 63-101.

20      On April 8, 2011, plaintiff, represented by counsel, appeared and testified at a
21  hearing before the ALJ.  *Id.* at 29-30, 39-52.  The ALJ also heard testimony from
22  Dr. Samuel Landau, a medical expert ("ME"), and from Troy Scott, a vocational
23  expert ("VE").  *Id.* at 31-39, 52-55.  On June 15, 2011, the ALJ affirmed the denial
24  of plaintiff's request for benefits.  *Id.* at 8-18.

25      Applying the well-known five-step sequential evaluation process, the ALJ
26  found, at step one, that plaintiff has not engaged in substantial gainful activity since
27  April 21, 2007.  *Id.* at 10.

28      At step two, the ALJ found that plaintiff suffers from severe impairments

1    consisting of: obesity and chronic low back pain with degenerative changes in the

2    lumbar spine consistent with age.  *Id.*

3          At step three, the ALJ determined that the evidence does not demonstrate that

4    plaintiff's impairments, either individually or in combination, meet or medically

5    equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix

6    1.  *Id.*

7          The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

8    determined that she can perform a limited range of light exertion as defined in 20

9    C.F.R. 404.1567(b).[2]  AR at 11.  The ALJ specifically found that plaintiff "can lift

10   and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and

11   walk for 2 hours in an 8-hour, and she can sit without restrictions but with normal

12   breaks such as every 2 hours."  *Id.*  Further, the ALJ found that plaintiff could

13   occasionally stoop and bend.  *Id.*  The ALJ found that plaintiff could climb stairs

14   but she could not climb ladders, work at height, or balance.  *Id.*

15         The ALJ found, at step four, that plaintiff is not capable of performing any

16

17   ─────────────────

18   [1]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

19   n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

20   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.

21   2007).

22   [2]   Light work "involves lifting no more than 20 pounds at a time with frequent
     lifting or carrying of objects weighing up to 10 pounds.  Even though the weight

23   lifted may be very little, a job is in this category when it requires a good deal of

24   walking or standing, or when it involves sitting most of the time with some pushing
     and pulling of arm or leg controls.  To be considered capable of performing a full or

25   wide range of light work, you must have the ability to do substantially all of these

26   activities.  If someone can do light work, we determine that he or she can also do
     sedentary work, unless there are additional limiting factors such as loss of fine

27   dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

28

1   past relevant work. *Id.* at 16.

2         At step five, the ALJ determined that, based upon plaintiff's age, education,

3   work experience, and RFC, plaintiff can perform a significant number of jobs in the

4   national economy, including sewing machine operator, electronics worker, and

5   parking lot booth attendant. *Id.* at 17.  Consequently, the ALJ concluded that

6   plaintiff does not suffer from a disability as defined by the Social Security Act. *Id*.

7   at 17-18.

8         Plaintiff filed a timely request for review of the ALJ's decision, which was

9   denied by the Appeals Council.  AR at 24-25, 1-4.  The ALJ's decision stands as the

10  final decision of the Commissioner.

11                                          **III.**

12                              **STANDARD OF REVIEW**

13        This court is empowered to review decisions by the Commissioner to deny

14  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

15  Administration must be upheld if they are free of legal error and supported by

16  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

17  But if the court determines that the ALJ's findings are based on legal error or are

18  not supported by substantial evidence in the record, the court may reject the findings

19  and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033,

20  1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

21  However, "the court will not reverse an ALJ's decision for harmless error, which

22  exists when it is clear from the record that the ALJ's error was 'inconsequential to

23  the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035,

24  1038 (9th Cir. 2008).

25        "Substantial evidence is more than a mere scintilla, but less than a

26  preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

27  evidence which a reasonable person might accept as adequate to support a

28  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

                                              4

1    F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,

2    the reviewing court must review the administrative record as a whole, "weighing

3    both the evidence that supports and the evidence that detracts from the ALJ's

4    conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

5    simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d

6    at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  But if

7    the evidence can reasonably support either affirming or reversing the ALJ's

8    decision, the reviewing court "'may not substitute its judgment for that of the

9    ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th

10   Cir. 1992)).

11                                               **IV.**

12                                       **DISCUSSION**

13   **A.     The ALJ Improperly Assessed Plaintiff's Credibility**

14          Plaintiff contends that the ALJ failed to articulate legally sufficient reasons

15   for discounting plaintiff's and her husband's credibility.  Pl's. Mem. at 3-10.  The

16   court agrees, at least with respect to plaintiff's credibility.

17          At the hearing, plaintiff testified that she sustained an injury on the job and

18   experienced excruciating pain in her back in April 2007.  AR at 40.  She rated her

19   pain between an 8 or 9 on an average day on a scale between 0 to 10.  *Id.* at 41.  She

20   has gained sixty pounds since her injury.  *Id.*  Her pain management doctor has

21   recommended doing a fusion and steroid injections, but plaintiff encountered

22   resistance from workers' compensation, from whom she last received a payment two

23   years ago.  *Id.* at 42.  Plaintiff complained about being able to start activities but

24   cannot finish them, and she can sit and stand for very short periods of time.  *Id.* at

25   43.  She also reported having to use a cane to ambulate for the past two years.  *Id.*

26   Plaintiff testified that she had a pain pump installed in March 2009 and again in fall

27   2010, and she also supplements this with oral medication, taken three to four times a

28   day, all of which result in limited relief.  *Id.* at 41, 45-46.  With respect to her daily

                                                5

1   activities, Plaintiff reported that she does little cooking and has a chair next to the
2   stove, goes to the grocery store with her son or husband while walking very slowly,
3   and watches television. *Id.* at 49-50.

4        The ALJ found that while plaintiff's impairments could reasonably be
5   expected to cause the alleged symptoms, her statements regarding the intensity,
6   persistence, and limiting effects were not credible to the extent they were
7   inconsistent with plaintiff's RFC. *Id*. at 12.  In so doing, the ALJ summarized the
8   medical evidence, including the testimony of the medical examiner at the hearing,
9   and noted that "[t]he degenerative disc disease is consistent with [plaintiff]'s age.
10  She has had several unremarkable tests.  [Plaintiff]'s back pain is unexplained, and
11  her complaints of pain are out of proportion with the records." *Id.* at 12.  The ALJ
12  also reviewed plaintiff's mental health history, concluding that "[t]here is no
13  evidence of ongoing psychiatric care or other mental health treatment other than
14  prescription refills.  Therefore, the alleged depression and anxiety are considered
15  non-severe." *Id.* at 14.

16       Besides finding that the objective medical evidence did not support plaintiff's
17  pain testimony, the ALJ also devalued plaintiff's credibility because he found
18  inconsistencies between her testimony and the record.  For example, the ALJ found
19  that although plaintiff testified about her doctor wanting to do a fusion on her back,
20  no records indicated this recommendation. *Id.* at 15.  The ALJ further noted that
21  plaintiff's reported daily activities are inconsistent with her claimed limitations. *Id.*
22  The ALJ also found that despite plaintiff's testimony to the contrary, the record did
23  not contain any support for the notion that she needed a cane to ambulate. *Id.*
24  Finally, the ALJ reasoned that plaintiff complained about stress and depression, but
25  the record showed that it was "situational and related to family and financial
26  issues." *Id.*

27       An ALJ must make specific credibility findings, supported by the record.

28

6

1   Social Security Ruling ("SSR") 96-7p.[3/]   To determine whether testimony

2   concerning symptoms is credible, an ALJ engages in a two-step analysis.

3   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007).   First, an ALJ must

4   determine whether a claimant produced objective medical evidence of an underlying

5   impairment, "'which could reasonably be expected to produce the pain or other

6   symptoms alleged.'"   *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

7   (9th Cir. 1991) (en banc)).   Second, if there is no evidence of malingering, an "ALJ

8   can reject the claimant's testimony about the severity of her symptoms only by

9   offering specific, clear and convincing reasons for doing so."   *Smolen*, 80 F.3d at

10  1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).   An ALJ may

11  consider several factors in weighing a claimant's credibility, including: (1) ordinary

12  techniques of credibility evaluation such as a claimant's reputation for lying; (2) the

13  failure to seek treatment or follow a prescribed course of treatment; and (3) a

14  claimant's daily activities.   *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-

15  47.

16        The first and seemingly primary reason why the ALJ here discounted

17  plaintiff's credibility was because the extent of her pain was unsupported by the

18  medical record.   But the Ninth Circuit has consistently held that an ALJ may not

19  discredit a claimant's testimony of pain solely because the degree of pain alleged by

20  the claimant is not supported by objective medical evidence.   *Id.*; *Smolen*, 80 F.3d at

21  1282 (ALJ may not reject testimony simply because there is no showing that

22  impairment can reasonably produce degree of symptom alleged).   Because the

23

24        [3/]   "The Commissioner issues Social Security Rulings to clarify the Act's
    implementing regulations and the agency's policies.   SSRs are binding on all
25  components of the SSA.   SSRs do not have the force of law.   However, because they
    represent the Commissioner's interpretation of the agency's regulations, we give
26  them some deference.   We will not defer to SSRs if they are inconsistent with the
    statute or regulations."   *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir.
27  2001) (internal citations omitted).

28

7

ALJ's discrediting of plaintiff based on a lack of objective evidence alone is not clear and convincing, the court turns to the non-objective record reasons the ALJ articulated for discrediting plaintiff's testimony.

First, the ALJ found that plaintiff testified that her doctor wanted to do a fusion on her back, but the treatment notes do not contain this recommendation, and the MRI studies did not reveal significant findings. *Id.* at 15.  But although the treatment notes suggest fusion surgery was ultimately ruled out, they also indicate fusion surgery was considered, and thus suggest a basis for plaintiff to have sincerely believed, even if incorrectly, that her doctor wanted to perform a fusion. For example, after a series of steroid injections, Dr. Park noted on October 10, 2007 that plaintiff was instructed to "go back to Dr. Colohan and obtain an re-evaluation to confirm that she is not a surgical candidate for a lumbar spine fusion." *Id.* at 691; *see also id.* at 692.  On January 23, 2008, Dr. Park indicated that plaintiff "has failed conservative therapy" and "is not a surgical candidate," and therefore would attempt an intrathecal pump trial and possible implant. *Id.* at 697.  These notes are not inconsistent with plaintiff's testimony that she and Dr. Park had talked "in the past" about Dr. Park wanting "to do a fusion." *See id.* at 42.

Next, the ALJ found that plaintiff's testimony regarding her limitations was inconsistent with the daily activities she reported elsewhere. *Id.* at 15.  During an August 2009 psychiatric evaluation, Dr. Bagner noted that plaintiff is able to dress, bathe herself, do household chores, cook, and manage money, that she sews and reads in her spare time, and that she travels by car with someone else driving. *Id.* at 730.  Plaintiff further reported to Dr. Bagner that she has good family relations but no relationships with friends. *Id.*  The ALJ also cited an earlier physical therapy progress report dated July 10, 2008 that noted plaintiff was experiencing "slight increased tolerance to weekly (not daily) household chores i.e. sweeping, mopping, laundry, etc." *Id.* at 426.  The ALJ found all of these activities "are inconsistent with the presence of an incapacitating or debilitating medical condition." *Id.* at 15.

8

But plaintiff has not claimed to be utterly incapacitated, and these daily activities are not inconsistent with what plaintiff subsequently reported at the hearing. Plaintiff made no representations at the hearing about dressing and bathing.  With respect to her other activities, she simply said she goes to the grocery store with either her son or husband, and that she cooks but has a chair next to the stove.  *Id.* at 49.  She also indicated that she tries to do housework but cannot finish.  *Id.* at 44. The ALJ failed to explain, and that court is unable to ascertain, in what ways plaintiff's representations to Dr. Bagner are inconsistent with her claimed limitations at the hearing.  The court also notes that plaintiff fell in October 2009, shortly after seeing Dr. Bagner, and she thereafter reported a worsening in her condition.  *Id.* at 756.

The ALJ also discounted plaintiff's credibility because plaintiff uses a cane to ambulate but "the record certainly does not support the need for an assistive device."  *Id.* at 15.  In particular, plaintiff testified at the hearing that Dr. Park suggested she use a cane.  *Id.* at 43.  The ALJ was correct that Dr. Park's records do not indicate he actually prescribed a cane for plaintiff; however, he documented at least two incidents of plaintiff falling and hurting her back.  *Id.* at 717, 756.  Falls of this nature would support cane usage, and nothing in Dr. Park's records preclude the possibility he may have suggested she use a cane.  Furthermore, records from other doctors indicate plaintiff was using a cane for ambulation.  *Id.* at 671, 673.  As such, the ALJ's reason that the record is inconsistent with cane use is not clear and convincing.

Finally, the ALJ noted that plaintiff complained of stress and depression, but her complaints were situational and related to family and financial issues.  *Id.* at 15. This misstates the record.  Plaintiff's progress notes from March 19, 2008 clearly demonstrate that she felt stress and anxiety over family and financial issues as well as health problems and pain.  *Id.* at 450.  Regardless, it is unclear, even assuming plaintiff experienced anxiety only with respect to family and financial issues, why

9

1    the ALJ found this inconsistent with her claimed condition.

2         Plaintiff also challenges the ALJ's rejection of plaintiff's husband's third

3    party report.  "[L]ay testimony as to a claimant's symptoms or how an impairment

4    affects ability to work is competent evidence and therefore cannot be disregarded

5    without comment."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal

6    quotation marks, ellipses, and citation omitted); *see Smolen v. Chater*, 80 F.3d 1273,

7    1288 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1513(d)(4) (explaining that

8    Commissioner will consider evidence from "non-medical sources," including

9    "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors,

10   and clergy," in determining how a claimant's impairments affect his or her ability to

11   work); 20 C.F.R. § 416.913(d)(4) (same).  The ALJ may only discount the testimony

12   of lay witnesses by providing specific "reasons that are germane to each witness."

13   *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1983); *accord Lewis v. Apfel*, 236

14   F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is

15   competent evidence that an ALJ must take into account, unless he or she expressly

16   determines to disregard such testimony and gives reasons germane to each witness

17   for doing so.").

18        The ALJ rejected plaintiff's husband's statements for three reasons.  First, the

19   ALJ noted the statements essentially repeated plaintiff's complaints, and this

20   repetition did "not add credence to her allegations."  AR at 16; *see id*. at 156-63.

21   But as just discussed, the ALJ failed to provide clear and convincing reasons for

22   rejecting plaintiff's credibility.  Second, the ALJ noted "as an aside" that plaintiff's

23   husband stood to gain financially from a disability determination; however, this is

24   true of virtually every spouse, and thus this reason "amount[s] to a wholesale

25   dismissal of the testimony of all [lay family] witnesses as a group and therefore does

26   not qualify as a reason germane to" plaintiff's husband.  *See Smolen*, 80 F.3d at

27   1289.

28        Third, the ALJ found plaintiff's husband's third party report form was not

10

1  supported by objective evidence.  Unlike the other reasons the ALJ provided for

2  discounting plaintiff's husband's statement, this is a germane reason.  *See Bayliss v.*

3  *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis*, 236 F.3d at 511)

4  (inconsistency with medical evidence is a germane reason for discrediting the

5  testimony of lay witnesses);  *Lewis*, 236 F.3d at 511 ("One reason for which an ALJ

6  may discount lay testimony is that it conflicts with medical evidence." (citation

7  omitted)); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ

8  properly discounted lay testimony that conflicted with the available medical

9  evidence."); *but see Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (improper

10  to discredit testimony of claimant's wife as not supported by medical evidence in

11  record).[4]  But although the court does not find the ALJ erred in rejecting plaintiff's

12  husband's statements, given that the court finds the ALJ did not provide clear and

13  convincing reasons for discounting plaintiff's credibility, on remand the ALJ should

14  again consider plaintiff's husband's statements, along with plaintiff's own.

15

16  _____

17      [4]  In so holding, the Ninth Circuit in *Bruce* relied on its prior decision in

18  *Smolen*, which held that the ALJ improperly rejected the testimony of the claimant's
family on the basis that medical records did not corroborate the claimant's

19  symptoms because, in doing so, the ALJ violated the Commissioner's directive "to
consider the testimony of lay witnesses where the claimant's alleged symptoms are

20  *unsupported* by her medical records." *Bruce*, 557 F.3d at 1116 (citing *Smolen*, 80

21  F.3d at 1289).  But the Ninth Circuit did not address its earlier decisions in *Bayliss*,
*Lewis*, and *Vincent*, in which, as discussed above, it expressly held that "[o]ne

22  reason for which an ALJ may discount lay testimony is that it conflicts with medical

23  evidence." *Lewis*, 236 F.3d at 511 (citing *Vincent*, 739 F.2d at 1995); *see also*

24  *Bayliss*, 427 F.3d at 1218.  Accordingly, although *Bruce* is the Ninth Circuit's most
recent pronouncement on this issue, given that no mention of *Bayliss*, *Lewis*, or

25  *Vincent* was made in that case, and that none of the holdings in those earlier

26  decisions concerning this issue were expressly reversed, it is unclear whether
discounting lay witness evidence on the basis that it is not supported by the

27  objective medical evidence in the record is no longer allowed.  According, the court

28  shall treat those earlier holdings as still being good law.

1    In sum, the court finds the ALJ erred in discounting plaintiff's credibility.

2    **B.      The ALJ Did Not Err In Considering Vocational Issues**

3    Under her second claim, plaintiff essentially contends that the jobs specified

4    by the VE, which the ALJ found plaintiff capable of performing, are inconsistent

5    with her inability to stand or walk only two hours out of eight, as those jobs are

6    defined by the Dictionary of Occupational Titles ("DOT"). Pl. Mem. at 10-13. The

7    court disagrees.

8    ALJs routinely rely on the DOT "in evaluating whether the claimant is able to

9    perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273,

10   1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1)

11   (DOT is source of reliable job information), 416.966(d)(1) (same). The DOT is the

12   rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d

13   1428, 1435 (9th Cir.1995). An ALJ may not rely on a VE's testimony regarding the

14   requirements of a particular job without first inquiring whether the testimony

15   conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at

16   1152–53 (citing SSR 00-4p). But failure to so inquire can be deemed harmless error

17   where there is no apparent conflict or the VE provides sufficient support to justify

18   deviation from the DOT. *Id.* at 1154 n. 19. In order for an ALJ to accept a VE's

19   testimony that contradicts the DOT, the record must contain "persuasive evidence to

20   support the deviation." *Id.* at 1153 (citing *Johnson*, 60 F.3d at 1435). Evidence

21   sufficient to permit such a deviation may be either specific findings of fact

22   regarding the claimant's residual functionality, or inferences drawn from the context

23   of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir.

24   1997) (citations omitted).

25   Here, the VE testified that a hypothetical person with plaintiff's RFC could

26   work as a sewing machine operator (DOT 787.685-010), electronic worker (DOT

27   726.687-010), and parking lot booth attendant (DOT 915.473-010). AR at 54. The

28   ALJ asked if the VE's testimony was consistent with the DOT, to which the VE

1   replied that it was. *Id.* at 55.

2       Plaintiff's contention that the ALJ erred by failing to inquire about reasons

3   for deviations in the VE's testimony from the DOT is unconvincing.  Although it is

4   true that the ALJ asked the VE only cursorily about consistency with the DOT, this

5   simple question was sufficient because the VE stated there were no inconsistencies.

6   Plaintiff does not specify in what ways the VE's testimony was inconsistent with the

7   DOT, other than pointing to plaintiff's RFC that limited her to standing for two

8   hours.  But even assuming there were inconsistencies between plaintiff's RFC and

9   the DOT's job descriptions, such error became harmless when plaintiff's attorney

10  followed up with the VE and questioned him about whether the numbers of jobs

11  available for each of the occupations would change if plaintiff were able to stand for

12  longer than three hours.  *See id.*  The VE replied that the numbers would not change

13  and confirmed that the jobs involve mostly sitting.  *Id.*  Therefore, there was no

14  apparent inconsistency between the VE's testimony that the jobs were considered

15  light work and the jobs' requirements in the DOT.

16      Plaintiff also attacks the ALJ and the VE's terminology of "parking lot booth

17  attendant" as opposed to the DOT's "parking lot attendant."  Pl. Mem. at 11-12.

18  There is no evidence that the VE was mistaken in his understanding of the position

19  and its requirements.  The work is still light and unskilled, and the VE's description

20  is consistent with the DOT.  AR at 54.

21      Finally, plaintiff argues that the ALJ erred by not relying on the VE's

22  responses to plaintiff's hypothetical questions based on further restrictions.  *See id.*

23  at 54-55.  But the Ninth Circuit has established that an ALJ does not need to add

24  further limitations to a VE's testimony that are not supported by the record.

25  *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).  Thus, plaintiff's

26  argument here is essentially a challenge to the determined RFC.  Because the ALJ

27  erred in evaluating plaintiff's credibility, it may be appropriate for the ALJ to

28  reconsider the VE's testimony with regard to further restrictions on remand,

1   depending on the ALJ's reconsideration of plaintiff's credibility.

2   **V.**

3   **REMAND IS APPROPRIATE**

4   The decision whether to remand for further proceedings or reverse and award

5   benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888

6   F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further

7   proceedings, or where the record has been fully developed, it is appropriate to

8   exercise this discretion to direct an immediate award of benefits. *See Benecke v.*

9   *Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,

10  1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns

11  upon their likely utility). But where there are outstanding issues that must be

12  resolved before a determination can be made, and it is not clear from the record that

13  the ALJ would be required to find a plaintiff disabled if all the evidence were

14  properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96;

15  *Harman*, 211 F.3d at 1179-80.

16  Here, as set out above, remand is required because the ALJ erred evaluating

17  plaintiff's credibility. On remand, the ALJ shall reassess plaintiff's credibility and

18  either credit it or provide sufficient reasons under the applicable legal standard for

19  discrediting her credibility. The ALJ shall also reassess and reconsider the

20  credibility of plaintiff's husband, and either credit his testimony or provide specific

21  reasons germane to him for rejecting it. The ALJ shall then proceed through steps

22  four and five to determine what work, if any, plaintiff is capable of performing.

23  //

24  //

25

26

27

28

1

## VI.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: September 23, 2013

_____

SHERI PYM
UNITED STATES MAGISTRATE JUDGE

15